FILED
2018 Jul-18 AM 09:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **HAZEL ANNETTE MALLOY,** | } |
| **Plaintiff,** | } |
| v. | } Civil Action No.: 6:17-CV-00510-RDP |
| **NANCY A. BERRYHILL,** **Acting Commissioner of Social Security,** | } |
| **Defendant.** | } |

## **MEMORANDUM DECISION**

Plaintiff Hazel Annette Malloy[1] ("Plaintiff" or "Malloy") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying her claims for a period of disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.    Proceedings Below**

Plaintiff filed her application for DIB on January 13, 2014, in which she alleged a disability onset date of April 24, 2013. (Tr. 18, 122-26). Plaintiff later amended her onset date to January 1, 2014. (Tr. 18, 36). The initial application was denied by the Social Security Administration ("SSA") on April 8, 2014. (Tr. 18, 71-75). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on April 23, 2014. (Tr. 18, 78-79). The hearing was held on August 17, 2015

---

[1] Plaintiff's full name is "Hazel Annette Malloy." Throughout the record Plaintiff is sometimes referred to as "Hazel" and other times as "Annette."

before Administrative Law Judge George W. Merchant ("the ALJ"). (Tr. 18, 87-91). In his decision dated September 25, 2015, the ALJ determined that Plaintiff had not been under a disability within the meaning of Sections 216(i) and 223(d) of the Social Security Act. (Tr. 26). The Appeals Council denied Plaintiff's request for review on February 21, 2017. (Tr. 1-3). This denial was the final decision of the Commissioner and therefore is now a proper subject for this court's appellate review.

**II. Facts**

Plaintiff was 49 years old on her amended alleged onset date. (Tr. 36). She alleges that she has been disabled since that time due to congestive heart failure, tendinitis, and arthritis. (Tr. 35, 37, 46). She has an eighth-grade education and last worked in April 2013 as a head housekeeper. (Tr. 39, 41). Plaintiff drew unemployment benefits until January 2014. (Tr. 36).

By way of background, in April 2009 Plaintiff presented to the Jasper Podiatry Center complaining of pain in her feet. (Tr. 210). Dr. Odle noted that Plaintiff's "nails are long, thick, and discolored," and were "painful during ambulation." (*Id.*). Dr. Odle ordered nails one through five to be debrided and recommended follow-up in 10 weeks. (*Id.*). Plaintiff did not return to see Dr. Odle until January 2011. (Tr. 209). Dr. Odle again found Plaintiff's "[n]ails to be long, thick, and discolored with subungual debris and clinical evidence of onychomycosis;"[2] and that Plaintiff's nails are "painful with ambulation and shoe pressure." (*Id.*). Dr. Odle ordered nails six through ten to be debrided. (*Id.*). Plaintiff returned to Dr. Odle in April 2012 complaining of frequent leg cramps along with burning and numbness in her feet. (Tr. 208.). Dr. Odle again ordered nails six through ten to be debrided. (*Id.*). In April 2013 Plaintiff returned to Dr. Odle. (Tr. 204-205). Dr. Odle examined the Plaintiff's new custom-made orthotics prescribed by Dr. Shah of the Lorna

---

[2] Onychomycosis is "a fungal disease of the nails." *Onychomycosis*, MIRRIAM-WEBSTER.COM, https://www.merriam-webster.com/medical/onychomycosis (last visited June 25, 2018).

Road clinic in Hoover.[3] (*Id.*). Dr. Odle noted that Plaintiff had been wearing the orthotics since "last Friday." (*Id.*). Dr. Odle noted that Plaintiff related chronic pain over lateral aspect of the left foot,[4] and that Plaintiff's foot is acutely painful with palpation. (*Id.*). Dr. Odle ordered nails six through ten to be debrided once again. (*Id.*).

In July 2012, Plaintiff presented to Dr. Bradley at Walker Medical Diagnostics for a foot pain study. (Tr. 260). Dr. Bradley viewed Plaintiff's X-ray and noted a relatively flat longitudinal arch, small plantar calcaneal spur, an atypically thin navicular bone (probably developmental), an atypically thin fourth metatarsal (probably developmental), and a mild hallux valgus deformity and splaying of the second and third toes. (*Id.*). There was "no convincing evidence of acute pathology." (*Id.*).

In April 2013 Plaintiff presented to Dr. Shah for evaluation of her foot problems, including a "long history of flat feet" and "bilateral congenital brachymetatarsalgia." (Tr. 240-42, 247-50). Dr. Shah noted that Plaintiff was "fine" until 6 months ago "but since then has experienced burning pain over the lateral column." (Tr. 241). Dr. Shah noted that Plaintiff was wearing custom-made inserts by David Ford, and, while they were helping, Plaintiff continued to experience pain. (*Id.*).

In late October 2013, Plaintiff was diagnosed with "tendinopathy[5] at the insertion of the peroneus of the base of the fifth metatarsal on the left foot" by Dr. Cuomo at Southern Orthopedics. (Tr. 289). After performing a physical evaluation of Plaintiff, Dr. Cuomo found that Plaintiff was

---

[3] Dr. Odle refers to Dr. Shah as "Dr. Shaw." (Tr. 204). Dr. Odle noted that Dr. Shah prescribed Plaintiff's custom-made orthotics, but Dr. Russell's records show that Dr. Russell referred Plaintiff directly to Dr. David Ford to have inserts made for her shoes. (Tr. 204, 250). This discrepancy does not materially affect the issues in this case.

[4] Dr. Odle noted the pain was located specifically at the insertion of the peroneal tendon at the fifth metatarsal base. (Tr. 204-205).

[5] Tendinopathy is "a failed healing response of the tendon." *Tendinopathy*, PHYSIOPEDIA, https://www.physio-pedia.com/Tendinopathy (last visited June 25, 2018).

3

"alert, oriented, and not in any acute distress" with a significant flat foot and a congenitally short fourth toe/metatarsal bilaterally. (*Id.*). Dr. Cuomo ordered, performed, and read radiographs of the left foot, which did not show any obvious abnormalities other than the short fourth metatarsal and a mild heel spur. (*Id.*). A radiograph of the right foot showed only a small heel spur at the base of the heel. (*Id.*). Dr. Cuomo wrote Plaintiff a script for some KG Cream and also prescribed physical therapy, stretching, and stepping on a freeze bottle. (*Id.*). She was advised to return to Southern Orthopedics in about a month for a reassessment of her progress. (*Id.*).

In November 2013, Plaintiff underwent a bone density exam at BHC-Walker Imaging, which returned normal findings other than the left femoral neck which indicated osteopenia. (Tr. 223).

In March 2014 Plaintiff underwent a disability determination by Dr. Bernard Simieritsch of the Winston County Medical Clinic. (Tr. 283-86). Plaintiff's complaints at that time were pain in both feet upon walking a half-mile, a spur on her head causing numbness in the neck, shoulders, and head, and shortness of breath due to purported congestive heart failure. (Tr. 283). On physical examination Dr. Simieritsch noted Plaintiff's (1) normal ability to heel and toe walk and squat and rise, (2) normal bilateral dexterity of fingers and thumbs, and (3) normal ability to button, tie shoelaces, pick up small objects, hold a glass, and turn a doorknob. (Tr. 285). Upon examination of the left foot x-ray, Dr. Simieritsch found a genetically shorter fourth metatarsal by about two centimeters, but the foot appeared to be otherwise normal.[6] (Tr. 282). Dr. Simieritsch noted that Plaintiff is obese and needs to lose eighty pounds, has a slightly reduced range of motion in her right shoulder, and has peripheral neuropathy of her feet. (Tr. 286).

---

[6] Although Dr. Simieritsch only examined an x-ray of Plaintiff's left foot, he concluded that Plaintiff has a short fourth metatarsal in both her left and right foot. (Tr. 282, 286). However, this omission does not materially affect the issues in this case.

4

In April 2015 Plaintiff presented to Dr. Mendelsohn of Cardiology PC for a cardiac evaluation. (Tr. 291-311). Dr. Mendelsohn examined duplex sonography of Plaintiff's right and left lower extremities and found no evidence of deep venous thrombosis and noted that all of Plaintiff's venous structures showed normal augmentation and compressibility. (Tr. 311). Dr. Mendelsohn noted Plaintiff had abnormal EKG or ECG.[7] (Tr. 305). She was directed to begin compression hose therapy and follow up in three months to reassess the condition of her legs and the possible need for endovenous ablation. (Tr. 294).

Since November 2011 Plaintiff has seen Dr. Russell as her primary care physician. (Tr. 215-74, 312-24; Pl. Br., Doc. #11 at 6). As Plaintiff's primary care physician, Dr. Russell referred Plaintiff to Dr. Bradley, Dr. Shah, Cahaba Imaging, and BHC-Walker Imaging and kept records from Plaintiff's visit to these doctors in his patient file for Plaintiff. (Tr. 215-74, 312-24). On August 17, 2015, the same date as Plaintiff's hearing before the ALJ, Dr. Russell issued a statement advising Plaintiff to elevate her feet three hours per day due to swelling and foot pain. (Tr. 324).

As to the effects of her medical conditions during the relevant period of January 2014 to the present, Plaintiff testified that because of her congestive heart failure she gets very short of breath and tires easily. (Tr. 35). Plaintiff testified that her feet are "real painful" and that they "burn and tingle … and swell." (Tr. 43). Plaintiff testified that because of arthritis in her shoulder sometimes it "gives away" and what she is holding "just falls." (Tr. 47). Plaintiff also noted that to get items off of shelves overhead that she has to step on a stool or have someone else get it for her. (*Id.*).

To help alleviate the symptoms of her congestive heart failure, Plaintiff takes Lasix which helps lower cholesterol. (Tr. 46, 49). Plaintiff testified that she felt the Lasix "helped with the fluid

---

[7] To be clear, Dr. Mendelsohn's records do not explicitly refer to Plaintiff as having congestive heart failure. (Tr. 305).

buildup around her heart." (Tr. 49). Plaintiff takes Ultram to assist with her foot problems. (Tr. 46). Plaintiff testified that the Ultram also combats her pain. (*Id.*). To help with the swelling of her feet and ankles, Plaintiff elevates her feet every day as prescribed by Dr. Russell. (Tr. 54, 50, 324). Plaintiff testified that if she does not elevate her feet everyday they tend to swell a great deal. (Tr. 50).

### III. ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ

6

determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In this case, the ALJ first determined that Plaintiff meets the insured status requirements of the Act. (Tr. 20). Next, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2014, her amended alleged onset date of disability. (*Id.*). The ALJ also determined that the Plaintiff has the following medically determinable severe impairments: left foot tendonitis; obesity; idiopathic neuropathy; and bilateral flat feet. (*Id.*) The ALJ noted that Plaintiff has the non-severe impairment of a right heel spur which does not cause more than minimal functional limitations or restrictions. (Tr. 21). At the next step of the analysis, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments. (Tr. 21).

The ALJ then determined that the Plaintiff has the residual functional capacity ("RFC") to perform light work. (Tr. 22). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements and other allegations concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. (Tr. 23).

At the final step, the ALJ determined that Plaintiff is capable of performing past relevant work as a head housekeeper and is therefore not disabled. (Tr. 24). The ALJ also noted that there are other jobs in the national economy that the Plaintiff could perform, and therefore made alternative findings for step five of the analysis that Plaintiff is not disabled. (*Id.*).

### IV.     Plaintiff's Argument for Remand or Reversal

Plaintiff argues that the ALJ's factual findings are not supported by substantial evidence or correct legal standards because (1) the ALJ failed to show "good cause" for dismissing the opinions and treatment records of Dr. Russell, and (2) the ALJ failed to assign any weight to the opinions of Dr. Odle. (Pl. Br., Doc. #11 at 14-27). The court addresses each argument in turn.

### V.      Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations

omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## VI. Discussion

For the reasons explained below, the court finds that the Commissioner based his decision on substantial evidence and correct legal standards were applied. Accordingly, the decision is due to be affirmed.

### A. The ALJ Had Good Cause for Giving Little Weight to the Opinion of Dr. Russell

A treating physician is a claimant's "own physician … who has provided [claimant] with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 591 n.3 (11th Cir. 2006) (quoting 20 C.F.R. § 404.1502). The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2003) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "[G]ood cause exists where the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240 (citing *Lewis*, 125 F.3d at 1440). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *See Lewis*, 125 F.3d at 1440.

There is no dispute that Dr. Russell is Plaintiff's treating physician. As her treating physician, Dr. Russell opined in August 2015 that Plaintiff should "elevate her feet three hours a

9

day due to swelling and foot pain." (Tr. 324). The ALJ gave little weight to this opinion evidence, finding that the conclusion is not supported by treatment records. (Tr. 23). Plaintiff argues that that the ALJ lacked good cause to reject Dr. Russell's opinion. (Doc. #11 at 15). The court disagrees.

Treatment records from Dr. Russell repeatedly reflect the results of Plaintiff's exams were normal. (Tr. 216-222). On November 20, 2013 Dr. Russell diagnosed Plaintiff with osteoporosis and sent her to BHC Walker Imaging for a bone density test. (Tr. 227). However, the bone density test revealed "osteopenia" in the "left femoral neck" with "otherwise normal bone mineral density." (Tr. 223). Although Plaintiff experiences symptoms such as "tiredness and aches" in both legs (Tr. 293), "leg heaviness" (Tr. 294), swelling (Tr. 311), and "foot discomfort" (Tr. 289), there is nothing in the record prior to August 2015 discussing a need to keep the legs elevated. In fact, a note from October 2013 discusses "holding off" on immobilization instead opting for stretching, a freeze bottle, and some prescription cream. (Tr. 289). No treatment notes ever discuss the elevation restriction.

Notes from other doctors also fail to support the elevation restriction. For example, in April 2013, Dr. Shah noted Plaintiff was in "no acute distress" and had received some benefit from inserts and arch support, while still experiencing some foot pain. (Tr. 240-42). In fact, Dr. Shah acknowledged Plaintiff's "congenital brachymetatarsalgia with arthritic changes" and "flat feet" and stated that if her pain continued, she would be scheduled for a cortisone injection. (Tr. 240-42). However, nothing more significant or restrictive was indicated. Similarly, although Dr. Odle found Plaintiff to have nails that were "long, thick, and discolored" with "clinical evidence of onychomycosis" resulting in painful ambulation and shoe pressure, Dr. Odle counseled only for nutrition and physical activity, with no limitations or restrictions noted. (Tr. 202-09). Other notes

from Dr. Mendelsohn suggest only that Plaintiff should start compression hose therapy (Tr. 294) and that Plaintiff should be evaluated for shoe inserts to correct her tendinitis problems (Tr. 241, 250).

Finally, Plaintiff's March 2014 consultative exam by Dr. Simieritsch fails to support the suggestion that Plaintiff should elevate her feet for three hours a day. At that time, Plaintiff reported that she could only walk about half of a mile before her feet started to burn, could only cook things that were quick and easy, and would frequently experience leg cramps and burning with numbness. (Tr. 283). However, Plaintiff was found to have a normal gait and ability to walk without assistance and a normal ability to rise and squat. (Tr. 285). She was found to have "pain in both heels worse on weight bearing" but no recommendations were made for Plaintiff other than losing weight. (Tr. 286).

Based on the foregoing, the ALJ correctly concluded that Dr. Russell failed to provide a sufficient explanation for his opinion that Plaintiff should elevate her feet for three hours a day, and also failed to provide objective clinical findings to support that opinion. *See* 20 C.F.R. § 404.1527(c), 416.927(c); *Crawford v. Commissioner*, 363 F.3d 1155, 1159 (11th Cir. 2004). Thus, there was "good cause" for according less weight to Dr. Russell's conclusory opinion. *Phillips v. Barnhart*, 357 F.3d at 1241 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). For this reason, the Commissioner's decision to afford Dr. Russell's opinion little weight is supported by substantial evidence and is due to be affirmed.

**B. The ALJ Assigned Proper Weight to the Opinion of Dr. Odle**

Plaintiff also argues that the ALJ committed reversible error by failing to assign any weight to the opinion of Dr. Odle and failed to adequately consider the evidence contained in the record. (Pl. Br., Doc. #11 at 24). Dr. Odle appears to be Plaintiff's podiatrist and has often noted her

11

reports of pain in her feet. (Tr. 204-10). However, the ALJ did not specifically cite to any of Dr. Odle's medical records when making an overall assessment of the case. (Pl. Br., Doc. #11 at 26).

Contrary to Plaintiff's argument, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered the claimant's medical condition as a whole." *Adams v. Commissioner*, 586 Fed. Appx. 531, 533 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)) (internal quotations omitted). The ALJ stated that he considered the record in its entirety. He was not required to discuss every piece of evidence in denying the claim for disability benefits. *See Cooper v. Commissioner*, 521 Fed. Appx. 803, 808-09 (11th Cir. 2013). Although the ALJ did not specifically mention Dr. Odle's name, he did consider Plaintiff's flat feet, foot pain, and numbness in the legs, all conditions for which she visited Dr. Odle. (Tr. 20-21; 204-10). Nothing in Dr. Odle's notes suggest that Plaintiff should be subject to any work limitations, only that she was counseled about nutrition and physical activity. (Tr. 204-10).

The record shows the ALJ considered claimant's condition as a whole. *See Tuggerson-Brown v. Commissioner*, 572 Fed. Appx. 949 (11th Cir. 2014) ("[I]t is apparent from the face of the ALJ's decision … that the ALJ did, in fact, consider all medical evidence in combination in concluding that [claimant] was not disabled."). His findings are supported by substantial evidence.

## VII. Conclusion

The court concludes that the ALJ's determination that the Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum decision will be entered.

**DONE** and **ORDERED** this July 18, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE